IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT — DECEMBER TERM 1844 — CONTINUED.

## Duffy *against* The Insurance Company.

8ws413
160   267

A post-nuptial contract between husband and wife, though declared void at law, is held good and carried into effect in equity.

If made without a valuable consideration, it will be deemed fraudulent in law against creditors; but if a valuable consideration is received by the husband from his wife for a settlement to her separate use, it is valid.

Where, therefore, the husband had a life-estate in his wife's land, and in consideration of $4000 paid them, they joined in a conveyance of the fee in trust to collect the rents and apply one half of them to its repayment, and to pay the other half to such persons as the wife should direct, and afterwards in trust to convey as she should direct, and subsequently made another conveyance to the assignees in that deed, in consideration of $12,000 advanced to the wife to enable her to pay off the $4000, in trust to sell, mortgage or let the premises, and after repaying the $12,000, to pay off certain creditors of the husband to the amount of $5509.25, which sum greatly exceeded the value of the husband's life-estate, (the property consisting of unproductive lots), and there being no ground to presume fraud or collusion, the conveyances were held to be valid.

THIS was an action of ejectment instituted in the District Court for the city and county of *Philadelphia*, by Francis Duffy against The Mechanics' and Tradesmens' Insurance Company, John Rankin and others, to recover possession of certain real estate. Michael Fox died on the 13th July 1838, intestate, without

2 K *                                         (413)

[Duffy v. The Insurance Company.]

widow, leaving issue four children, one of whom, Margaretta, married Woodburn Potter. He was seised at his death of certain real estate, and partition was made thereof. On the 20th March 1841, Potter presented his petition to the Common Pleas of Philadelphia county, praying to be discharged as an insolvent debtor. This petition was in the ordinary form, and notice was given to the creditors personally, among others to Samuel Badger. The proceedings in the Common Pleas resulted in the discharge of Potter, and the appointment of Duffy as his assignee or trustee for the benefit of creditors. On the 14th April 1841, an indenture tripartite was executed as follows:

This Indenture, Tripartite, made the 14th day of April 1841, between the Girard Life Insurance Annuity and Trust Company of Philadelphia of the one part, Woodburn Potter of the City of Philadelphia Gentleman, and Anna Margaretta his wife, of the second part, and the Mechanics' and Tradesmens' Insurance Company of Philadelphia, of the third part. Whereas, the said Woodburn Potter and Anna Margaretta his wife, by Indenture of Agreement, dated the 26th day of October 1838, recorded, &c., after reciting as is therein recited, did for and in consideration of the sum of $4000, lawful money to them advanced, grant, bargain, sell, release and confirm unto the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, their successors and assigns, all their and each of their right, title and interest of, in and to all and singular the Real Estate, whereof Michael Fox (the father of the said Anna Margaretta Potter) died seised, wheresoever the same may be situated. To hold in trust nevertheless, and upon the special uses and confidences therein declared, that is to say, first, that they the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, should and might collect and receive all and singular the rents, issues and profits of said real estate, and deducting and retaining from the amount so collected, as a full compensation and commission for their trouble and pains in such collection, four per centum on such amount, (which commission it is thereby mutually covenanted and agreed that they should so retain and deduct) apply the monies received and collected as aforesaid, the one-half thereof to the payment of the aforesaid sum of money by them advanced, with lawful interest thereon from the day of the date thereof, and the remaining one-half part thereof, pay to such person or persons as the said Anna Margaretta Potter should, by her written order direct and appoint, notwithstanding her coverture and wholly independent of any control of her said husband, without the same being in any manner liable for or in consequence of any of the debts or engagements of her said husband then or thereafter to become due, and the receipt of the said Anna Margaretta should at all times be a full and sufficient discharge for any payments made to her by the said parties of the second part thereto. Se-

[Duffy v. The Insurance Company.]

condly, after full satisfaction of the said sum and interest and de-
duction of the said commission, then upon this further trust, that
they the said The Girard Life Insurance Annuity and Trust Com-
pany of Philadelphia should and would, and they the said the G.
L. I. Co. of Phil. did thereby covenant, promise, and agree to and
with the said parties of the first part thereto, their heirs and as-
signs, that they would forthwith grant and convey (by such in-
strument as the counsel learned in the law of the said Woodburn
Potter, and Anna Margaretta should advise and direct) all the
premises thereby conveyed or mentioned and intended to be con-
veyed without any other or further incumbrances than might then
exist thereupon, to such persons and upon such trust as she the
said Anna Margaretta Potter should or might by deed duly exe-
cuted in the presence of two subscribing witnesses and duly ac-
knowledged according to law direct and appoint, and it was fur-
thermore mutually covenanted and agreed by, and between the
said parties thereto, that the said Woodburn Potter and Anna
Margaretta Potter should and would proceed as soon as might be
to procure a partition of the real estate whereof the said Michael
Fox was as aforesaid seised, and that if it should be necessary or
expedient, they should have the right and privilege to use the
name of the said parties thereto of the second part in any proceed-
ings which might legally be adopted in order to effect said parti-
tion at the proper cost and charge of the said Woodburn Potter
and Anna Margaretta Potter, and that from and after such parti-
tion made, the part allotted in severalty to the said Woodburn
Potter and Anna Margaretta Potter should be deemed and taken
to pass and be conveyed by the indenture now in recital, in lieu
of the undivided share therein before specified, and be held for the
purposes and upon the uses, terms and conditions and trusts
therein contained, set forth and declared.

And whereas, proceedings in partition have been lately had and
prosecuted in the Orphans' Court for the city and county of Phila-
delphia in pursuance whereof Daniel Fitler, Esquire, High Sheriff
of the said county, and an inquest have parted and divided the
real estate of the said Michael Fox deceased in way and manner
by law directed, and by a certain schedule under their respective
hands and seals returned to the said court bearing date the 20th
day of November 1840 and now filed therein, did allot and assign
one full, equal and undivided fifth part of the said real estate be-
ing all and singular the messuages, tenements, lots of ground and
yearly rent charge therein as such specifically described and de-
signated unto the said the Girard Life Insurance Annuity and
Trust Company of Philadelphia, their successors and assigns for
ever, in trust nevertheless and to, for, and upon the special use
and confidences set forth, declared, and contained in, and by the
said above recited Indenture of agreement as in and by the said

recited Indenture and the records and proceedings of the said court, reference thereto severally being had, will fully appear.

And whereas the said The Mechanics' and Tradesmens' Insurance Company of Philadelphia have advanced to the said Anna Margaretta Potter, with the consent and approbation of her husband, the said Woodburn Potter, the sum of $12,000 to enable them, among other things, to pay off and discharge the sum now due by them to the said The Girard Life Insurance Annuity and Trust Company of Philadelphia, and have agreed to accept of a conveyance of the premises aforesaid upon the uses, terms and conditions hereinafter declared and set forth, as well for the purpose of securing the repayment of the said sum of $12,000 by them advanced as aforesaid, with interest, and also at the request of the said Anna Margaretta Potter to secure the persons hereinafter named the payment of the several sums hereinafter mentioned.

And whereas the said Anna Margaretta Potter has fully paid to the said The Girard Life Insurance Annuity and Trust Company of Philadelphia, the said sum of money by them advanced as above mentioned, together with interest and commission, according to the true tenor of the said above recited indenture of agreement:

Now this indenture witnesseth that the said Anna Margaretta Potter, pursuant to and in exercise and execution of the power and authority to her for this purpose reserved and given by the said herein above recited indenture of agreement, and of every or any other power or authority in any wise enabling her in this behalf, doth by this present deed by her duly executed in the presence of the two witnesses whose names are hereunto subscribed, and by her duly acknowledged according to law, direct and appoint that the said The Girard Life Insurance Annuity and Trust Company of Philadelphia, shall and do by this present deed grant and convey all the said trust, estate and premises in them vested under the said above recited indenture of agreement, with the appurtenances, unto the said The Mechanics' and Tradesmen's Insurance Company of Philadelphia, their successors and assigns, to and for their own proper use and behoof, for ever to hold the same and every part thereof (excepting only a certain yearly rent charge of $112.50, hereinafter more particularly mentioned and designated) to, for and upon the uses, intents and purposes, and with and under and subject to the powers, terms, conditions and agreements hereinafter limited, declared and set forth of and concerning the same, and to and for no other use, intent and purpose whatsoever; that is to say, upon trust to let and demise or when and as from time to time they may deem proper, to bargain and sell all or any part of the said estate and premises by public or private sale to any person or persons whomsoever, either absolutely or on ground rent for the greatest and best price or prices,

or yearly rent or rents that can or may be reasonably had and gotten for the same, and by good and sufficient deeds of conveyance and assurance in the law to grant convey and assure the same unto the purchaser or purchasers thereof, his her or their heirs, successors and assigns for ever, freed and discharged from all and every the uses, trusts and estates hereby declared of and concerning the same, and out of such part or parts of the said estate as may be disposed of on ground rent as aforesaid, to reserve the yearly rent or rents that may be agreed upon for the same, free of any deduction, charges or assessments whatsoever, to them the said The Mechanics' and Tradesmen's Insurance Company of Philadelphia, their successors and assigns for ever, in trust for the like and same uses, intents and purposes, and with, and under, and subject to the like and same powers, terms, conditions and agreements as are herein and hereby limited, declared and set forth of and concerning the trust, estate and premises aforesaid, and with the clauses of entry, distress, and re-entry and covenant for the payment of the rent and taxes, and provisions for the extinguishment of the same rent or rents within a limited time, as are usual in ground rent deeds in the city of Philadelphia, and further, as to the yearly rent charges, or ground rents which may be reserved in pursuance of the trust above created, to grant, bargain, sell and dispose of the same or any part thereof, upon such terms as they, the said The Mechanics' and Tradesmen's Insurance Company of Philadelphia may deem proper, and by good and sufficient deeds of conveyance in the law to grant and convey and assign the same to the purchaser or purchasers thereof, his, her or their heirs, successors and assigns for ever, freed and discharged from all and every the use, trust and estates hereby declared of and concerning the same and without any liability on the part of any purchaser or purchasers as to the application of the purchase money of any part or parts of said estate, or of any ground rent or rents that may be sold, or of the extinction money of any such rents, and upon this further trust, that the said The Mechanics' and Tradesman's Insurance Company of Philadelphia, their successors and assigns shall and may when and as from time to time they may deem proper, raise, borrow and take up on interest such sum or sums of money as they may see fit, and thereupon in order to secure the payment of all such sum and sums of money with interest, to grant and convey any part or parts of the whole of the said trust estate, or of the said yearly rent charges or ground rents, which may be reserved as aforesaid to the person or persons, or body or bodies corporate from whom or which such loan or loans may be obtained, his, her or their heirs, successors and assigns, in mortgage freed and discharged from all and every the uses, trusts and estates hereby declared of and concerning the same, and without any liability on the part of such mortgagee or mortgagees as to the application of the moneys so raised on loan,

and as to the moneys that may be produced from the rents and income of the said premises, or by any sale or sales, or mortgage or mortgages of any part or parts of the whole of the said estate, or of the ground rents which may be reserved as aforesaid, and by the extinguishment of any such ground rents and all other moneys in any way coming to them, the said The Mechanics' and Tradesman's Insurance Company of Philadelphia, under the trusts hereinbefore declared, in trust to apply the same from time to time when and as received (after deducting and paying all taxes, ground rent and necessary repairs to the premises and commission charges, and necessary and reasonable expenses attendant upon the creation and execution of the trust) for and towards the payment, liquidation and discharge of the said $12,000 so as aforesaid advanced by them the said The Mechanics' and Tradesman's Insurance Company of Philadelphia, with lawful interest thereon, from the day of the date hereof and after full satisfaction, and payment of the said sum of $12,000 with interest, as aforesaid, Then, in the second place, to pay to Elhannan W. Keyser and Charles Fox, administrators de bonis non, &c. of Michael Fox deceased, the sum of $2969.25, the amount by them alleged to be due for advance in money and furniture made to the said Anna Margaretta Potter, during the lifetime of the said Michael Fox; and after full satisfaction and payment of said lastmentioned sum, then, in the third place to pay to the several persons hereinafter named, the sums of money hereinafter mentioned, to wit, to Samuel Badger, Esq., the sum of $1500, to John Buddy the sum of $690, and to Crawford Riddle the sum of $350; the said four last mentioned sums of money to be paid, with lawful interest thereon, from the date hereof. And after paying all taxes, ground rent, and necessary repairs to the premises, and commission charges and necessary expenses as aforesaid, and paying and fully discharging the said sum of $12,000, and the said four other several sums hereinbefore mentioned, then in trust to pay over and assign the overplus of the moneys that may be produced as aforesaid, and to grant, convey, and assure, all the real estate that may then remain undisposed of, in pursuance of the hereby created trusts, unto and to the use of such person or persons, and for such estate and estates, and in such sort, manner and form as she the said Anna Margaretta, by any deed, or by her last will and testament or any writing in the nature of and by her intended as and for her last will and testament, such deed or last will and testament, or writing intended as and for a last will and testament, to be by her signed and sealed in the presence of at least two credible subscribing witnesses, notwithstanding any coverture or whether she be covert or sole, shall at any time hereafter direct, limit and appoint. Provided that it shall and may be lawful for the said The Mechanics' and Tradesman's Insurance Company of Philadelphia to deduct and retain five per centum on all such sums of money received as

rents, as they shall collect under the trust hereby created, as a full compensation and commission for their trouble and pains in such collection, and in the management of the trust. And as to the yearly rent charge excepted as aforesaid, being all that certain yearly ground rent or sum of $112.50, lawful silver money of the United States, chargeable half yearly, issuing and payable by John F. Willetts, his heirs and assigns, (in trust to convey to Rosanna Fraley, in consideration of money that had been advanced by her to Anna M. Potter).

And this indenture further witnesseth, that the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, for and in consideration of the sum of $4600, lawful money, unto them well and truly paid by the said Woodburn Potter, and Anna Margaretta, his wife, at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, (being in full of the sum of money by them advanced as aforesaid, together with interest and commission, as aforesaid), have granted, bargained, sold, enfeoffed, released, and confirmed, and by these presents (pursuant to and in execution of the direction of the said Anna M. Potter, herein above contained, and of all and singular the powers in them vested in this behalf), do grant, bargain, sell, alien, enfeoff, and confirm unto the said Mechanics' and Tradesman's Insurance Company of Philadelphia, their successors and assigns, all and singular the messuage, tenements, lots of ground, rents, hereditaments, real estate whatsoever in them vested under the said first above recited indenture of agreement, and to them, the said the Girard Life Insurance Company of Philadelphia, allotted on the partition aforesaid, and every part and parcel thereof, together with all and singular the rights, members, incidents and appurtenances whatsoever, thereunto belonging, or in any wise appertaining, and the reversions, remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, use, trust, property, claim, and demand whatsoever of them the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, as well at law as in equity of, in, to, and out of the same, and every part and parcel thereof, to have and to hold all and singular the hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said the Mechanics' and Tradesman's Insurance Company of Philadelphia, their successors and assigns, to and for the only proper use and behoof of the said the Mechanics' and Tradesman's Insurance Company of Philadelphia, their successors and assigns for ever, in trust nevertheless to, for, and upon the uses, intents, and purposes, and with, and under, and subject to the powers, terms, and conditions, and agreements herein above limited, expressed and declared, and to and for no other use, intent, or purpose whatsoever, Provided, however, and it is hereby expressly declared that nothing herein contained shall be construed and taken as a warranty

or covenant of any kind, on the part of the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, and that these presents are intended only to convey and release such interest in the premises as they the said the Girard Life Insurance Annuity and Trust Company of Philadelphia, at law or in equity, have a right to convey. In witness whereof the said the Girard Life Insurance Annuity and Trust Company of Philadelphia have caused their common or corporate seal to be hereunto affixed, and the said Woodburn Potter and Anna Margaretta Potter his wife, have hereunto set their hands and seals, the day and year above written.

Signed, sealed, and delivered by the above named W. Potter and A. M. Potter in the presence of us.

WOODBURN POTTER.
A. M. POTTER.

Signed, G. GRISCOM,
    JNO. C. MITCHELL.

R. W. RICHARDS, *President.*

Receipt of consideration on the date above written.
Acknowledged April 14, 1841.
Recorded      "      "  1841.

*Appended to the Proceedings in Partition was this Document:*

I do hereby, for myself, my heirs, executors, administrators and assigns, renounce, relinquish and quit claim in and to any right, title or estate, coming or belonging to my wife, Anna Margaretta Potter, daughter of said Michael Fox deceased, and do desire that her share shall be vested in her, and her heirs absolutely.

WOODBURN POTTER.

*Philadelphia, April 13th, 1841.*

The plaintiff offered to read in evidence the insolvent petition of Woodburn Potter, filed in the Common Pleas (of March Term 1835, No. 178) on 16th March 1835, and proceedings thereupon, for the purpose of establishing the fact that Potter was largely indebted, and had no property at the time of executing the deed to the Girard Insurance Company, and that his indebtedness then appeared upon the records of said court. The defendants objected to the reading of the petition, the offer was overruled and exception sealed.

Also, the records of various judgments against Potter in the District Court, entered of record previous to the date of execution of the deed to the Mechanics' and Tradesmen's Insurance Company, at various dates between June 1838 and said date; also, transcript of alderman Samuel Badger's docket judgment, on 11th March 1840, in favour of Jacob O. Ewing, for arrears of rent.

The plaintiff offered the insolvent petition of Woodburn Potter, filed 16th March 1835, for the purpose of showing that the debt

[Duffy v. The Insurance Company.]

referred to in the last mentioned transcript was due at the date of that petition, and was acknowledged so to be upon the records of the Common Pleas. Objection was made, the offer overruled, and exception taken.

The said petition was again offered by the plaintiff, for the purpose of affecting the defendants with notice of Potter's indebtedness on the 14th October 1838, at the time of the execution by him of the settlement bearing that date. Objection was made, the offer overruled and exception taken.

The plaintiff then proposed to examine John Powell (a creditor of W. Potter, whose claim was due before October 1838), for the purpose of establishing the existence and amount of the debt by the usual mode of proving his book of original entries, &c., the entries having been made by himself. Upon the defendant's objection, the testimony was overruled and exception sealed.

Julius Alsop, a clerk in Mr Scherr's piano factory, was offered to prove the existence of a claim against Potter, for a piano sold him 24th October 1840 for $450, by the book of original entries. The testimony was objected to, overruled and exception taken.

Woodburn Potter was then produced by the plaintiff for the purpose of proving his insolvency prior to and in October 1838. Objection was made by the defendants, and the offer overruled and exception taken.

Samuel Badger testified that he was President of the Mechanics' and Tradesmen's Company, previous to and at the date of the deed in their favour, 14th April 1841.

The plaintiff put this question to the witness: — " Did you receive notice of Woodburn Potter's application to the Court of Common Pleas for the benefit of the insolvent laws in March or April 1841 ?" The question was objected to upon the ground that notice should be traced to the Board of Directors and not to the President. The offer was overruled and exception sealed.

The witness continued and was cross-examined. In the course of this the defendants put the following question: — " Was Mr Potter's application under the insolvent laws mentioned at the Board of Directors ?" The plaintiff objected to the question, the objection was overruled and exception taken.

*Witness continued.* — I have no recollection of having heard it mentioned at the Board. The business of the Board of that Institution was done by the Board or by the Directors. The whole $12,000 was paid by the company to me as the attorney of Mrs Potter, and were paid out by my checks.

*Question by defendants.*—Did all that money go to the payment of debts ? The plaintiff objected, the objection was overruled and exception sealed.

*Witness continued.*—I paid the greater part of the money to the creditors myself. I can't say which debts they were. I recollect one to the Girard company, $4600; one to the Marshall House

(my brother and myself) for $2000 or $3000; Crawford Riddell about $200, &c., &c.; indeed all but $700 or $800 was paid to Potter's creditors. My impression and Mrs Potter's at that time was that her estate could not be worth less than $40,000. I knew who were creditors by the instructions of Mr and Mrs Potter.

The plaintiff again offered to read in evidence the insolvent petitions and proceedings thereon of Woodburn Potter, to March Term 1835 and to September Term 1832, upon the ground that the defendants had given in evidence other declarations of Potter as to his indebtedness, and were precluded from urging that objection. The defendants objected to the offer. The court sustained the objection and sealed an exception.

The defendants produced in evidence deeds from the Mechanics' and Tradesmen's Insurance Company to their co-defendants, executed in or about the month of January 1842. The consideration moneys had been paid to the company by the purchasers.

The defendants then produced Alexander Dougherty, who testified that he had been cashier of the M. & T. I. Co. since 1840, and attended all the meetings of the Board of Directors in 1841 at which any business was transacted in reference to this trust.

*Question by defendants.*—From your attendance at those meetings at the time the company paid the $12,000, and before, had they any notice, or had the directors notice of Potter's application for the benefit of the insolvent laws? The plaintiff objected. The objection was overruled and exception taken.

*Witness continued.*—No, there was no such notice. As the cashier of the company I had no such notice, nor any reason to dream of such an application.

*Cross-examined.*—I did hear Mr Badger speak of Potter's indebtedness in reference to the application of the fund from the company. I think it was after the payment by the company. I have no recollection of any particulars stated before the board. My impression is, that the money was to be appropriated to payment of his debts and his wife's; this was, I think, after the money was paid over by us. I think the loan was applied for by Mrs Potter or some one in her behalf. There certainly was a statement that the Girard Loan Company were first to be paid. I heard the money was to pay debts with on the same day with the execution of the deed to the company.

The Judge charged the jury as follows:

This is an action of ejectment to recover possession of several lots in this city and county. The plaintiff claims as assignee of Woodburn Potter, an insolvent debtor, appointed as it is said on the 16th April 1842 by the Court of Common Pleas, upon the discharge of previous assignees. The plaintiff claims to recover all the title and estate which Potter had in the lots described on the 29th March 1841. It appears that Potter was at that time the husband of Anna Margaretta Fox, who was the daughter of Mi-

[Duffy v. The Insurance Company.]

chael Fox, deceased. It is agreed that Michael Fox died on the 13th July 1838, intestate, leaving four children, of whom Anna Margaretta, wife of Potter, was one, and six grandchildren, the issue of a deceased child. Upon the death of Michael Fox, Potter became seised in right of his wife in his wife's share. On the 18th September 1840, proceedings in partition were commenced and the estate was divided, and the property in question was set out as the share of Mrs Potter.

But nearly two years previously to the proceedings in partition, viz: on the 26th October 1838, Potter and wife executed a conveyance of the wife's interest to the Girard Life Insurance Annuity and Trust Company, and it was upon the petition of this company and Charles Fox that the partition was made. The sheriff allotted the share of Mrs Potter to this company, referring expressly to the terms of the conveyance by Potter and wife to the company. On the 14th April 1841, The Girard Life Insurance Annuity and Trust Company conveyed the same property to the Mechanics' and Tradesman's Insurance Company, one of the defendants. On the 25th and 31st January 1842, The Mechanics' and Tradesman's Insurance Company conveyed part of this property to the other defendants, John Ranken, Isaac Noble, John Coulter, John C. Cusac, Samuel Kennedy, and Joseph Arbuckle.

An objection is made by the defendants founded upon the partition, which I may as well notice before going further. The conveyance by W. Potter and wife to the Girard &c. Co. was made before the partition. Of course he conveyed only an undivided interest in the whole of the real estate of Michael Fox deceased, and not these particular lots now in question. These lots were set off upon the partition afterwards, and the sheriff made the deed directly to the Girard Life Insurance Annuity and Trust Company. Now the argument is, that as Mr Potter made no conveyance at all of these lots, but at the utmost of his right in an undivided fifth part of them, and as the plaintiff demands the exclusive possession of the lots in question, he cannot recover. It is unnecessary to decide whether the plaintiff might not under this view of the case, recover an undivided fifth part of these lots, because I think he may adopt the partition as valid between the heirs, without admitting the right of the Girard Life Insurance Annuity and Trust Company to hold the title. A partition is not strictly a conveyance of title. The object and the effect of the proceedings is to divide and apportion lands held in common by several persons into purparts or shares to be held afterwards in severalty by the same title they were held before. The plaintiff therefore may treat the partition as valid, and at the same time deny the right of the Girard Life Insurance Annuity and Trust Company to have the title.

This matter being disposed of, I proceed to state the ground on which the plaintiff expects to recover. The plaintiff alleges that

[Duffy v. The Insurance Company.]

the deed by W. Potter and wife, on the 26th October 1838, to the Girard Life Insurance Annuity and Trust Company was fraudulent and void in law.   He says, in the first place, that it was a voluntary settlement made by Mr Potter on his wife, he being indebted at that time.   It is contended that a man who is in debt cannot make a settlement of his property or any part of it on his wife after their marriage.   If he does so, it is contended that his creditors may set it aside.   This is correct in point of law.   A man who is in debt, cannot after his marriage, make a valid conveyance of his property for the benefit of his wife and children. His creditors may, notwithstanding the conveyance, take the property for the satisfaction of their debts.   In this case, evidence has been given of several debts due by Mr Potter at the time of his conveyance to the Girard Life Insurance Annuity and Trust Company.   I refer to the judgments in favour of Samuel Hobson, for $564 30—in favour of Joseph Piper for $152—in favour of S. Watkinson for $63—and in favour of Hugh Boyle.   The plaintiff has also given evidence of debts contracted after the date of this deed, which need not now be particularly mentioned.   The plaintiff contends that he has a right to recover the property in question for the benefit of the creditors subsequent to the conveyance as well as those who were creditors at the time.   There is no difficulty on this point; for the law permits all the creditors to come in, whether they were creditors at the time of the conveyance or became so afterwards, if the conveyance was voluntary and void in respect to persons who were creditors at the time of the conveyance.

But the defendants, on the other hand, contend, that even admitting that the conveyance was voluntary and void in respect to the creditors of Mr Potter—and even admitting that the plaintiff had a right to take this property away from the Girard Trust Company, still it by no means follows that the plaintiff can take it away from them, because they say that they are *bonâ fide* purchasers, and paid a full consideration for the property, and had no notice of the fraud, if there was one.   There is no difficulty on this point.   The Mechanics' and Tradesmen's Insurance Company took a conveyance from the Girard Life Annuity and Trust Company of the whole property; and the other defendants (Messrs Arbuckle, Rankin, Noble, Coulter, Cusac and Kennedy) afterwards bought of the Mechanics' and Tradesmen's Insurance Company; and if the Mechanics' and Tradesmen's Insurance Company did take the conveyance of this property *bonâ fide* and paid a valuable consideration for it, without notice of any fraud, their title would be good, though the title of the Girard Life Annuity and Trust Company should be void.   And if the title of the Mechanics' and Tradesmen's Insurance Company is good, it would protect the title of the other defendants.

But even if the title of the Mechanics' and Tradesmen's Insur-

ance Company and the title of the Girard Company should both be fraudulent and void, still each of the other defendants may protect his own title to the particular land conveyed to him by showing that he at least bought *bonâ fide* and paid a valuable consideration for the land conveyed to him without notice of any previous fraud; so that there is no difficulty on this point.

The questions upon this part of the case then, are these:

1. Was the conveyance of 26th October 1838, by Mr Potter and wife, voluntary?

2. Was Mr Potter indebted at the time?

If both these questions are decided in favour of the plaintiff, then it will be necessary to inquire,

3. Whether the defendants or any of them are *bonâ fide* purchasers for a valuable consideration, without notice of any fraud?

Before mentioning the other questions raised in this case, I will ask your attention to the first of these questions. Was the conveyance of the 26th October 1838, by Potter and wife to the Girard Life Annuity &c. Company a voluntary conveyance? It purports on its face to be a conveyance in fee-simple upon the consideration of $4000 paid to Woodburn Potter and wife, in trust to collect the rents, issues and profits, and apply one half of them to the re-payment of the $4000; and to pay the other half to such persons as Mrs Potter shall direct; and after the $4000 with the interest should be paid in trust, to convey the premises to such persons and upon such trusts as she shall direct. Now a deed may purport to be what it is not in truth. It may purport to be made on a valuable consideration, when in truth no consideration is given. But no question has been made about the consideration in this case. It is not denied that the Girard Company paid the $4000 to Mr and Mrs Potter as stated in this deed. Is this then a voluntary conveyance? A voluntary conveyance is a conveyance which is made without any pecuniary inducement, or a conveyance made without any such consideration as the law deems valuable. But this deed not only purports to have been made upon the consideration of $4000, but in truth was made upon that consideration, paid to the grantors. It is not, therefore, a voluntary conveyance, and if it is void against creditors, it must be so for some other reason.

The plaintiff's counsel compare this deed to a mortgage — the principal intent of it, so far as respects the company, being to secure the re-payment of $4000. If it were in form a mortgage for that sum actually lent, no one would think of calling it a voluntary conveyance. And certainly if it is in substance a mortgage, it can with just as little propriety be called a voluntary conveyance. How, then, can this deed be defeated? If it was actually a fraudulent deed, got up by collusion between Mr Potter and wife and the Girard Company to enable Mr Potter to put his property beyond the reach of his creditors, it would be void. But this is

[Duffy v. The Insurance Company.]

not pretended. There is no evidence, or even a suggestion or surmise that the company had any design not perfectly consistent with honesty and fairness towards the creditors of Mr Potter. Here, then, we have a deed made upon the consideration of $4000, paid by the company—and the company acting in perfect good faith.

It is contended, however, that Mr Potter's intentions were fraudulent. He intended, it is said, by means of this deed, to settle the bulk of the property on his wife, with a view to delay, hinder and defraud his creditors. But even if this be so, it will not make the deed fraudulent and void as to the Girard Company, if they did not participate in the fraudulent intention. Actual fraud, which shall make a deed void, cannot exist, except between two or more persons (*Rolle's Abr.* 549); and, therefore, if you should be convinced that Mr Potter and his wife had an intention to defraud creditors, yet if the company knew nothing of such an intention, and did not take the conveyance by collusion with them, the deed is good in the hands of the company.

It is contended further by the plaintiff that the trusts declared in this deed in favour of Mrs Potter are void, because so far as it respects these trusts, it is a voluntary settlement by Mr Potter upon his wife of property in which he had a life estate. This is a distinct ground from the former, and if the plaintiff had gone to the Girard Life Annuity Company while they held the estate, and had tendered the $4000 and the interest to the company, they might have recovered the property in an action of ejectment. But without paying or tendering the money, the company might have held the lands under the deed. The company, however, have been paid their debt, and by direction of Mrs Potter conveyed the estate to the Mechanics' and Tradesmen's Insurance Company. And the question now arises, whether this last deed is fraudulent or void as to the creditors of Mr Potter.

This deed recites the conveyance by W. Potter and wife to the Girard Life Insurance Company on the 26th October 1838; also the proceedings in partition; also that the Mechanics' and Tradesmen's Insurance Company have advanced to Mrs Potter with the consent of her husband, $12,000, to enable them to pay off the sum due to the Girard Company. It recites also, that they have agreed to accept a conveyance upon certain uses, terms, and conditions, for the purpose of securing the $12,000 advanced by them, and to secure certain persons named in the deed, specified sums. After this recital, follows an appointment or direction by Mrs Potter, to the Girard Company to convey the premises to the Mechanics' and Tradesmen's Insurance Company in trust, (with the exception of a rent charge of $112.50), to let or demise the property, or to bargain and sell it absolutely or on ground rents, reserving the rents to the Mechanics' and Tradesmen's Insurance Company in trust for the purposes mentioned in the deed. Or to sell the rents

reserved, and upon the further trust to mortgage the premises to secure the payment of money borrowed by the company. And as to all the money received by the company on the sale or mortgage of the premises, or rents and income, and other monies received under the trusts declared, to apply the same, after deducting ex- penses, towards the payment of the $12,000 advanced by the company to Mrs Potter, with the interest, and in the second place, to pay Elhannan W. Keyser and Charles Fox $2969.25 for ad- vances made to Mrs Potter during the lifetime of her father. 3. To pay Samuel Badger $1500, John Buddy $690, Crawford Riddle $350, the last four sums with lawful interest from the date of this deed. And upon the further trust to pay the overplus, and grant and assume all the estate undisposed of, to the use of such persons as Mrs Potter should by deed or will appoint. And as to the ground rent of $112.50, in trust to convey it immediately to Ro- sanna Fraley.

This deed does not appear upon its face to be a voluntary con- veyance any more than the other. It recites $12,000 had been advanced to Mrs Potter by this company with the consent of her husband, for the purpose, among other things, of paying the $4000 due to the Girard Company. Mr Richards testifies this sum was paid to the Girard Company, and Mr Badger testifies the $12,000 came into his hands as assignee for Mrs Potter, and that he paid the Girard Company. This deed was also taken to secure the repayment of the $12,000 among the purposes. If it is void as against creditors, therefore, it is not so for the reason that it was made without a valuable consideration. But in regard to this company also, it is not pretended that they were guilty of any actual fraud or collusion with Mr Potter and wife, with in- tent to delay, hinder and defraud creditors. Why then is it not valid? Because, it is said, the deed was made in pursuance of a power which was void in respect to creditors of Mr Potter. The $4000, it is said, is paid to the Girard Company and they could claim nothing more under the deed from Potter and wife to them. The residue of the trusts in that deed were for the benefit of Mrs Potter, and being after marriage they were void as to creditors. These trusts are made to depend upon a power of appointment vested in Mrs Potter, which was void, and so no estate passed by the deed of the Girard Company to the Mechanics' and Trades- men's Insurance Company. Upon this point it is to be observed if the power was simply and merely void to all intents and pur- poses, the title to this estate remains in the Girard Company, and as the deed to that company was neither voluntary nor fraudulent in fact, and vested in them before the assignment of Mr Potter in the insolvent court, the fee-simple did not pass by the assignment to the plaintiff. Upon this view of the case the legal estate would not be vested either in the plaintiff or the defendants, and the Girard Company is not a party to this action.

And as to the right in equity to the estate; the Girard Company, if they had not been paid, would have the right to keep the possession. If the Girard Company still held the estate, no conveyance having been made, and the plaintiff had paid or tendered the money, he then would be entitled to recover. But the uncontradicted evidence is that the Mechanics' and Tradesmens' Insurance Company furnished the money to pay the Girard Company, and the deed recites the fact that they advanced it for that purpose. And it is not equitable that the plaintiff should avail himself of the payment to the Girard Company, made by the money advanced by the Mechanics' and Tradesmens' Insurance Company as a part of the consideration of the conveyance to them. Upon this view of the case the plaintiff ought at the least to have reimbursed the $4000 and interest before he claims the estate which the Mechanics' and Tradesmens' Insurance Company had taken as their security for it. That is to say, if this power of appointment is merely and absolutely void to all intents and purposes, the Mechanics' and Tradesmens' Insurance Company have the right to stand in the place of the Girard Company, and keep the estate till this sum be paid. But this power is not merely and simply void. It was good as between the parties; and if Mr Potter had not been indebted on the 26th October 1838, nor became so afterwards under circumstances that would justify the inference of fraud in the conveyance, the power would be good and the estate under it valid.

Whether, under the circumstances of the case, the estate passed by the conveyance of the Girard Company to the Mechanics' and Tradesmens' Insurance Company or not, perhaps is not necessary to be determined. For if the estate did pass by that conveyance, the situation of the Mechanics' and Tradesmens' Insurance Company in respect to the $4000 paid to the Girard Company is certainly no worse than if it did not pass. For on this supposition, they would not only have the legal estate, but the equitable right to retain it until the $4000 should be paid to them. And that sum not having been paid or tendered, the plaintiff has not put himself in a situation to recover. As to the residue of the $12,000, it was advanced to Mrs Potter generally without reference to any particular appropriation of it. But it is said that she used the whole of it to pay her husband's debts, except $700 or $800 which she used to pay her own private debts. But in regard to $4600 of the sum advanced, it was advanced expressly to pay the Girard Company, and was so applied; and to this extent the Mechanics' and Tradesmens' Insurance Company have the rights of the Girard Company, whether the power was void or not.

The difference between these two deeds (which I state rather for the sake of informing the parties how the matter strikes my mind than because it is necessary to this case) is this:

(1.) The conveyance by Potter and wife to the Girard Company

was a deed upon a valuable consideration, without actual fraud; and the deed is valid so far as it was intended as a security for the $4000 and interest. The equity of redemption, as it has been called, or the right to the property settled upon the wife by way of a trust estate after the payment of this sum, vested in the company, subject to the exclusive control and appointment of Mrs Potter. This part of the deed is invalid as to the previous creditors of Mr Potter, so far as his life estate is concerned.

(2.) The conveyance to the Mechanics' and Tradesmens' Insurance Company was also made upon a valuable consideration, and without actual fraud, and thus far it corresponds with the other deed, but it depends upon a power contained in the vicious portion of the preceding deed. And the question is, whether the previous creditors cannot defeat the conveyance under the power upon the same grounds they could defeat the power itself, if it had not been exercised. There may not be much difficulty in resolving this question, but as it does not necessarily arise, and as this precise question has not been discussed by counsel, I shall not go into it.

The other ground is sufficient. The deed to the Girard Company not being infected with the fraud, is good to the extent of a security. The money to pay the Girard Company was furnished by the Mechanics' and Tradesmen's Loan Company expressly for the purpose of paying them, and was in fact so applied. The consideration of this advance was intended to be the transfer of the property held by the Girard Company. The plaintiff has neither paid nor offered to pay either the Girard Company nor the Mechanics' and Tradesmen's Loan Company, and no evidence has been given to show that the money has been reimbursed out of the estate. Whether, therefore, the appointment be void or not —in other words, whether the estate passed by the deed of the Girard Company to the Mechanics' and Tradesmens' Insurance Company or not, the plaintiff has not the right upon the evidence and conceded facts in the case to recover the possession of the property in question.

It is said, however, that the deed by Potter and wife to the Girard Company is a mortgage, and that the plaintiff has a right to recover, subject to the mortgage. But this deed is not in form a mortgage. It is a conveyance in fee-simple upon certain trusts, and contemplates a change of the possession from the grantors to the grantees. The grantees took possession and claimed to hold it, and undertook to transfer the possession to the Mechanics' and Tradesmen's Insurance Company. This point, therefore, will not avail the plaintiff. This view of the case makes it unnecessary to decide the numerous points of law proposed by the counsel on both sides. So far as they relate to the matters which I have spoken of, they are answered. So far as they relate to other matters, they are irrelevant to the turning points of the case. I will now sum-

marily state what I had stated upon the cardinal points of the case.

1. The deed by Potter and wife to the Girard Life Insurance Annuity and Trust Company does not appear on its face to be a voluntary conveyance.

2. It is in evidence, and the fact is not denied, that $4000, the consideration expressed, was paid by the company to the grantors.

3. There is no evidence of actual fraud or collusion with Potter and wife by the company to defraud the creditors of Mr. Potter. This deed, therefore, was valid in the hands of that company, as a security for the sum of $4000 and the interest.

4. The Mechanics' and Tradesman's Insurance Company furnished the money to pay the Girard Company upon the faith and consideration of the transfer of the estate to them, and the money so advanced by them was actually paid, as intended, to the Girard Company.

5. No evidence has been given to show that the Mechanics' and Tradesman's Loan Company have been reimbursed this sum or any other sum out of the estate in question.

6. There is no evidence of an offer or tender of payment by the plaintiff either to the Girard Company or to the Mechanics' and Tradesman's Insurance Company of this sum of $4000 and the interest or any other sum, either before the institution of the suit or since.

7. But without the payment or tender of that sum during the trial or before, the plaintiff in this action cannot recover in this action against either of the defendants.

If any of these facts were disputed, it would belong to you to decide them, but as no question has been made about these facts, and as they give rise to a question of law which decides the action, I have thought it improper to trouble you with the consideration of any other, which, however they might be found by you, would not change the rights of the parties in this action.

The plaintiff directed my attention to the sums received by the Mechanics' Company, and said they amounted to more than $4600. I therefore charged as follows:

It is, however, said that the Mechanics' Company have been reimbursed this $4600 which was due to the Girard Company. This matter was not called to my attention on the argument. But this inaccuracy in the statement of the facts makes it necessary, if the fact be so, to decide whether the deed by the Mechanics' Company is void because of the invalidity of the power in the deed to the Girard Company. Upon this point, then, I have to say to you that if the Mechanics' Company paid the $12,000, as stated in the deed, and took the conveyance *bonâ fide*, as a security for that sum, and without collusion with Mr. Potter and wife, they have a right to hold the premises as a security for the repayment of the $12,000 mentioned in the deed and proved to have been paid. But

[Duffy v. The Insurance Company.]

there is no evidence that they have realized this sum out of the estate, nor is there any evidence that it has at any time been tendered.

The plaintiff excepted to the charge.

Errors were assigned in the several bills of exception; also to the court's instructing the jury:

1. That the agreement between Potter and wife and the Girard Insurance Company of the 26th October 1838 was not a voluntary conveyance, so far as it affected Potter's life estate in one-half the profits, and in the whole after payment of the $4000.

2. That the said agreement was not a mortgage nor in the nature of a mortgage.

3. That the Mechanics' and Tradesmen's Insurance Company had a right to hold the property until the $4000 paid by Mrs Potter to the Girard Company was repaid them.

4. That the creditors of Potter could not defeat the conveyance to the Mechanics' and Tradesmen's Insurance Company made under the power reserved in the agreement of 26th October 1838, upon the same grounds that they could defeat the power itself had it not been exercised.

5. That without the payment or tender of the $4000 to the defendants, the plaintiff could not recover.

6. That the Mechanics' and Tradesmen's Insurance Company had a right to hold the premises as a security for the re-payment of $12,000.

7. In deciding the whole matter as a question of law and not leaving anything to the jury, whereas the questions of notice and of fraud were questions of fact that ought to have been left to the jury.

*M'Call* and *Guillou,* for the plaintiff in error, referred to 4 *Kent* 137; 2 *Whart.* 240; *Ather. Mar. Set.* 241; 2 *Atk.* 600; 2 *P. R.* 82; 5 *Watts* 410; 1 *Rawle* 349; 3 *Watts & Serg.* 127; 5 *Rawle* 149; 3 *P. R.* 162; 3 *Johns. Ch.* 481, 492; 2 *P. R.* 82.

*St. G. Campbell,* for the defendants in error, cited 6 *Cranch* 8; 4 *Watts & Serg.* 546; 5 *Ibid.* 499; 10 *Vez.* 139; 5 *Madd. R.* 414; 4 *Russ.* 112; 5 *Johns. Chan.* 431; 3 *Paige* 440, 614; 10 *Watts* 29, 139; 1 *Rawle* 131; 9 *Vez.* 190; 4 *Serg. & Rawle* 321; 11 *Ibid.* 179; 6 *Watts & Serg.* 285; 5 *Serg. & Rawle* 231; 1 *Dall.* 128; 3 *Bro. Ch. Ca.* 214.

*M'Murtrie* and *J. Sergeant,* for Mrs. Potter, cited 1 *Bligh* 105; 1 *Binn.* 126–7; 2 *Watts* 82; 4 *Watts* 287; 6 *Whart.* 576; 2 *Lev.* 148, 71; *Prec. Chan.* 113; 3 *Wils.* 358; *Cowp.* 278; 1 *Brown's P. C.* 145; 2 *Atk.* 514, 521; 10 *Vez.* 129; *Sid.* 133; 9 *Vez.* 190; 2 *Pow. Mortg.* 1024, 1035; 3 *Atk.* 377; 2 *Sug. Powers* 25, 26; 1

[Duffy v. The Insurance Company.]

*Rawle* 171; 5 *Rawle* 144; 12 *Vez.* 103; 17 *Serg. & Rawle* 419;
1 *Watts* 397; *Bac. Ab.* "*Bargain & Sale,*" *D.*; *Dyer* 337 *a*; *Sh.
Touch.* 511; 22 *Vin. Ab.* " *Uses,*" *O. pl.* 8; 2 *Rolle's Rep.* 191;
*Plowd.* 59; *Co. Lit.* 554; 2 *Rolle's Ab.* 5; *Sug. Vend.* 286, 290;
1 *Hill* 579; 24 *Pick.* 276; *Chit. Eq. Dig.* 394; 1 *Tanlyn* 172;
1 *Bro. Ch. C.* 138; 1 *Meriv.* 638; 9 *Vez.* 190; 5 *Rawle* 144; 5
*Watts & Serg.* 100; 6 *Ibid.* 300; 3 *Ibid.* 194; 1 *Vez.* 179; 2 *Atk.*
384; 2 *Vern.* 437; 1 *P. Wms.* 264, 347; 2 *Ibid.* 664; *Amb.* 150;
*Cas. Tem. Talb.* 64; 1 *Vern.* 213, 294; 3 *East* 119.

The opinion of the Court was delivered by
KENNEDY, J. — The evidence mentioned in the several bills of
exception which was rejected by the court, could have had no
weight in the determination of the cause by the jury, if it had
been received, and therefore may well be regarded as wholly im-
material and insufficient to produce a reversal of the judgment.
Several points were made and discussed on the trial of the cause
in the court below, but all may be included and considered in the
question whether the arrangement made by Potter and his wife
first with the Girard Life Insurance Annuity and Trust Company
of Philadelphia, and afterwards with the Mechanics' and Trades-
men's Insurance Company of Philadelphia as a third party, was
binding upon the parties and valid against the creditors of Mr
Potter.   By this arrangement a certain portion of the real estate
which Potter became possessed of in right of his wife after mar-
riage, was settled upon her for her separate use.   It is objected
by the creditors of Potter that according to the rules of the com-
mon law he could not make such an arrangement with his wife
after marriage; and even if he could, it was made without consi-
deration, and therefore void as against them.   It is doubtless true
that there must be always two parties at least to a contract, and
hence a man cannot make a contract with himself, or in other
words with his wife, as she is generally considered the same as
himself, or both as but one person in law.   Her being or legal
existence as a distinct person is suspended during the marriage,
or at least is incorporated and consolidated with that of her hus-
band.   And upon this principle of the union of person in husband
and wife, depend all the legal rights, duties and disabilities, which
either of them acquires by or during the marriage.   For this rea-
son it may be said a man cannot grant anything to his wife or
enter into a covenant with her; for the grant would be to suppose
her to possess a separate and distinct existence.   And therefore it is
also generally true that contracts made between husband and wife
when single are avoided by the intermarriage.   *Story's Equity pl.*
1367.   But in courts of equity, although husband and wife are
regarded as one person in proper cases, yet they are not consi-
dered so in every case.   On the contrary, courts of equity in Eng-
land, and here in Pennsylvania, where we have no courts of equity

regularly organized as such, courts of law, for many purposes, treat the husband and wife, as the civil law treats them, as distinct persons, capable, in a limited sense, of contracting with each other, of suing each other, and of having separate estates, debts and interests. *Arundell* v. *Phipps*, (10 *Vez.* 144, 149); *Story's Equity pl.* 1368. Accordingly it was ruled by this court that a wife might acquire a separate property in equity by an agreement with her husband, even without the intervention of trustees *M'Kennan* v. *Phillips*, (6 *Whart.* 571). And for want of a court of chancery in Pennsylvania to compel a husband to convey to a trustee for the separate use and benefit of his wife, where a court of equity would interpose for that purpose, the courts of law will consider him a trustee, so that the wife shall have all the benefit she would be entitled to claim and receive, the same as if the property were vested in a trustee for her separate use. *Jamison* v. *Brady*, (6 *Serg. & Rawle* 467). Hence a bequest to the wife for her separate use cannot be set-off by the husband, I take it, without her consent, against a debt due by him to the testator's estate; and it was held that in an action by the husband and wife for the recovery of the legacy, the debt owing by the husband to the estate of the testator could not be set-off so as to defeat the payment of the legacy for the separate use of the wife. *Jamison* v. *Brady*, (6 *Serg. & Rawle* 467). So post-nuptial contracts between husband and wife, though declared void at law, have been held good and carried into effect by a court of equity. For example, where a wife having a separate estate, entered into a contract with her husband to make him a certain allowance out of the income of such separate estate for a reasonable consideration, the contract, although void at law, was held obligatory and was enforced in equity. *More* v. *Freeman*, (*Bunb.* 205). So if the husband shall after marriage for good reasons contract with his wife that she shall separately possess and enjoy property bequeathed to her, the contract will be upheld in a court of equity. See *Harvey* v. *Harvey*, (1 *P. Wms.* 125–6); *S. C.* (2 *Vern.* 659, 660), and *Mr Raithby's note*. So a wife may become a creditor of her husband by acts and contracts during marriage; and her rights as such will be enforced against him and his representatives. As for instance, if a wife unite with her husband to pledge her estate or otherwise to raise money out of it to pay his debts or meet any other occasion for his accommodation, whatever may be the mode or form adopted to carry such purpose into effect, the transaction will in equity be treated according to the true intent of the parties. See *Tate* v. *Austin*, (1 *P. Wms.* 264), *Mr Cox's note thereto*; *S. C.* (2 *Vern.* 689), and *Mr Raithby's note*: also *Pawlet* v. *Delaval*, (2 *Vez., Sen.*, 663, 669); from which it appears that this doctrine is settled and clearly established; and likewise recognised as being so by Mr Justice STORY in his *Equity Jurisprudence, pl.* 1373. The

[Duffy v. The Insurance Company.]

principle contained in it most clearly embraces the case under consideration, and the only objection made to the application of the principle, if it does exist, is that the husband's indebtedness at the time he made the arrangement here with his wife, put it out of his power to make it available against his creditors, unless he had received a full and adequate consideration for doing so.

But it is said that the provision made for his wife by it was voluntary and without consideration, and therefore must be deemed fraudulent in law as against his creditors.  If this were true, that is, that it was made without a valuable consideration, the conclusion might be correct; but it is perfectly manifest that a most valuable consideration was received by the husband from his wife for all that was given by him in trust for her separate use and benefit; but this is not all: for what would seem to render the arrangement still more firmly binding if possible, upon the creditors is that the whole of the consideration so far as received by Mr Potter the husband on the credit of his wife's estate, amounting to $12,000 received by her consent, without which he could not possibly have received it, was, with the exception of about $700 or $800, actually applied to the payment of his debts and received by his creditors towards liquidating their claims against him; and the further sum of $5509.25, the residue of the consideration, to be raised by the trustees out of the same estate with interest thereon from the date of the deed, was also to be applied to the payment of other debts therein specifically mentioned.  Mr Potter, the husband, had but a life-estate, at most, in the property out of which the $17,500 were to be raised with interest thereon, upon which, for aught that appears to the contrary, he could not, at most, probably have raised $1000.  His wife, however, had the fee-simple therein, and the property being in an unproductive state, of but little annual value, and such as money to any considerable amount could only be raised from by disposing of the fee-simple estate therein, it became necessary, if his creditors or any portion of them were to be paid at all, that he should get by some means or other his wife to join him in disposing of her right to some part of the estate in addition to all his own right therein. With a view to raise money for this purpose, which was certainly a most laudable one, Mrs Potter joined with her husband in giving up her right to the fee-simple in the whole of the estate to raise out of the same the $17,509.25 with interest thereon, in consideration that the residue of the proceeds of the whole estate which was to be sold and disposed of, after defraying all the expenses and charges attending the execution of the trust, should be held by the trustees for her immediate and separate use and benefit as therein directed.  Here there was a giving up by the wife of her right to the fee-simple in part of the estate which she alone had the right to dispose of as the owner thereof, in consideration of

which the husband granted his right to the immediate possession of the residue thereof to trustees for the separate use and benefit of his wife. The right to the fee-simple in the estate may well be regarded as the separate estate of the wife in a limited or qualified point of view; for without her consent and act it could not be disposed of or even encumbered by her husband or any other person. This being the case, why then was it not competent for her to purchase with her interest in a part of the estate the interest of her husband in the whole of it, her interest being greatly more valuable than his? The reasoning of the Lord Chancellor and all that he says on the subject in *Lady Arundell* v. *Phipps & Taunton,* (10 *Vez.* 149), is in support of the proposition that a wife with her separate estate may purchase from her husband, and the purchased interest will be protected even against creditors, if the transaction between the husband and wife be *bonâ fide.* And the conclusion to which Mr Roper comes from a view of the cases on this subject in his treatise on the law of property arising from the relation between husband and wife, vol. 1, page 324, is, that "the giving up of any *valuable* interest by her in consideration of the settlement *after* marriage, will support it against creditors and subsequent purchasers, because such a settlement does not class among those that are voluntary, but among such as are made for a valuable consideration; in fact the wife herself becomes a purchaser for herself and family." That the wife gave up a *valuable* interest in the present case over which her husband had no control, cannot be questioned. And it must be presumed too that it was of sufficient value, at least, to prevent all presumption of collusion or fraud being raised from its inadequacy to the value of what was settled upon her by the husband; for no evidence was offered by the plaintiff on the trial, as it would appear, to prove the contrary. Neither does it appear that collusion or fraud in fact was alleged or even pretended to have been intended by the parties in the transaction against the creditors of the husband. The consideration given by the wife for all that was settled upon her by the husband, which could with the least propriety be said to belong to him exclusively, must therefore be taken to be amply sufficient to support the provision in favour of the wife. And indeed the consideration in such cases will never be weighed in very nice scales, if the transaction otherwise appears to be honest. *Middlecome* v. *Marlow,* (2 *Atk.* 520) ; *Nunn* v. *Wilsmore,* (8 *T. R.* 529) ; or unless it be *proved* that the settlement *vastly* exceeded the consideration, so that from the inadequacy a collusion or fraud may be fairly inferred to have been intended on the creditors. Per Lord Hardwicke in *Ward* v. *Shallet,* (2 *Vez., Sen.,* 18).

From the view thus taken of this case it will be seen that a different decision of the court below in regard to the admission or rejection of the evidence mentioned in the several bills of excep-

[Duffy v. The Insurance Company.]

tion, would not have varied materially the true character of the case, and that the ultimate decision of it ought still to have been the same. The judgment is therefore affirmed.

Judgment affirmed.